UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEAN KEVIN LURIE, M.D.<br>5125 Chevy Chase Parkway<br>Washington, DC 20008,<br><br>     Plaintiff,<br><br>v.<br><br>MID-ATLANTIC PERMANENTE<br>MEDICAL GROUP, P.C. (MAPMG)<br>D/B/A KAISER PERMANENTE,<br>2101 East Jefferson Street<br>Box 6649<br>Rockville, Maryland 20849-6649,<br><br>YANCEY PHILLIPS, M.D.<br>2101 East Jefferson Street<br>Box 6649<br>Rockville, Maryland 20849-6649,<br><br>BEDAD ARYAVAN, M.D.<br>9429 Meadowshire Lane<br>Great Falls, Virginia 22066,<br><br>and,<br><br>JACOB LUSTGARDEN, M.D.<br>4305 Thornapple Street<br>Chevy Chase, Maryland 20815,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____ |

**COMPLAINT**

JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. This Court also has jurisdiction under 28 U.S.C. § 1331 because the civil actions arise under the Constitution, laws, or treaties of the United States, including the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA"), and the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et. seq. ("ERISA"), and the doctrine of pendant jurisdiction. This Court also has jurisdiction pursuant to §§ 11-921 and 13-423 of the D.C. Code (2001 edition).

2. Plaintiff's action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 in a case of actual controversy.

VENUE

3. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia. Specifically, Plaintiff Dr. Lurie was employed by Defendant Kaiser in the District of Columbia prior to being transferred to Prince George's County, Maryland, and it was understood that a substantial portion of the employment at issue was to be performed in the District of Columbia.

NATURE OF THE ACTION

4. This action arises out of an employment relationship between Plaintiff DR. DEAN KEVIN LURIE (hereinafter, "Plaintiff Dr. Lurie") and Defendant MID-ATLANTIC PERMANENTE MEDICAL GROUP, P.C. (MAPMG) D/B/A KAISER PERMANENTE (hereinafter, "Defendant Kaiser"). Plaintiff performed vascular surgery and other medical services and medical research for Defendant Kaiser as a staff physician from August 15, 1988, until he was

2

improperly discharged on October 21, 2005, after more than 17 years. He was told that the reason for his discharge was due to falsifying time records. The Maryland Office of Unemployment Insurance found that the evidence was insufficient. Plaintiff Dr. Lurie believes that he was discriminated against in violation of the Age Discrimination in Employment Act of 1967, as amended, with regard to discharge based on his age (48). He believes one of the reasons was to deprive him of future Kaiser pension benefits which he had attained, in violation of Section 510 of ERISA, entitling him to relief under Section 502 of ERISA. He was also wrongfully discharged in violation of Defendant Kaiser's own policies and procedures, and in violation of a two-year research contract. Plaintiff is seeking money damages for employment discrimination, wrongful termination, and breach of contract. Plaintiff Dr. Lurie also seeks injunctive relief barring Defendant Kaiser and other individual defendants from interfering with his treatment of patients. Defendant YANCEY PHILLIPS, M.D. ("Defendant Dr. Phillips"), the discriminating Kaiser official who terminated Plaintiff Dr. Lurie, also denied Plaintiff Dr. Lurie admission to the Kaiser referring provider network. Defendant Dr. Phillips, Defendant BEDAD ARYAVAN, M.D. ("Defendant Dr. Aryavan"), and Defendant JACOB LUSTGARDEN, M.D. ("Defendant Dr. Lustgarden") (Defendants Drs. Phillips, Aryavan and Lustgarden are collectively referred to herein as the "Individual Defendants") have hampered and interfered with the formation and operation of the medical practice Plaintiff Dr. Lurie has been establishing since leaving Defendant Kaiser. Plaintiff Dr. Lurie seeks admission to the network and for Defendant Kaiser and the Individual Defendants to cease and desist from interfering with his medical practice. He also seeks reasonable attorney's fees, interest and costs of this action.

PARTIES

3

5.  Plaintiff Dr. Lurie is an individual residing at 5125 Chevy Chase Parkway, Washington, DC 20008, and a resident of the District of Columbia.  He is licensed to practice medicine in the District of Columbia and Maryland.  Plaintiff Dr. Lurie is 48 years old.

6.  Defendant Kaiser is a HMO company, with its principal place of business located at 2101 East Jefferson Street, Box 6649 Rockville, Maryland 20849-6649, and a citizen of the State of Maryland.  Defendant Kaiser does business in the District of Columbia.  At all time relevant to this Complaint, Defendant Kaiser has been and is engaged in an industry affecting commerce within the meaning of 29 U.S.C. §630(b).

7.  Defendant Dr. Phillips is employed by Defendant Kaiser, and upon information and belief is a citizen of the State of Maryland and practices medicine as an employee of Defendant Kaiser in the State of Maryland and the District of Columbia.

8.  Defendant Dr. Aryavan is employed by Defendant Kaiser, and upon information and belief is a citizen of the State of Virginia and practices medicine as an employee of Defendant Kaiser in the State of Maryland and the District of Columbia.

9.  Defendant Dr. Lustgarden is employed by Defendant Kaiser, and upon information and belief is a citizen of the State of Maryland and practices medicine as an employee of Defendant Kaiser in the State of Maryland and the District of Columbia.

<u>COMMON ALLEGATIONS</u>

10.  Plaintiff Dr. Lurie began his employment with Defendant Kaiser on or about August 15, 1988.  He practiced medicine for Defendant Kaiser in the District of Columbia and Prince George's County, Maryland.

11. Plaintiff Dr. Lurie attended medical school at the University of Pennsylvania Medical School, where he also performed six years of surgical residency. He completed his residency at the Sinai Hospital of Detroit which is affiliated with the University of Michigan. He was hired by Defendant Kaiser after completing his training. He is Board Certified in General Surgery and Vascular Surgery.

12. Plaintiff Dr. Lurie performed vascular surgery and other medical services and medical research for Defendant Kaiser. He also performed administrative duties, including serving as the director of salary and benefits from 1990 to 1994.

13. During his employment by Defendant Kaiser, Plaintiff Dr. Lurie received many service awards. He was rewarded for his performance with periodic bonuses and salary increases. In April 1999, Defendant Kaiser recognized Plaintiff Dr. Lurie's special competence in vascular surgery by awarding him a retroactive salary increase. In 2003, he was awarded a Certificate of Recognition for his loyal and dedicated service over fifteen years. In September 2005, he was given the Distinguished Art of Medicine Award for superior patient care. At that time, he had a 20% increase in surgical volume per month and 140% of his normal scheduled patients.

14. Plaintiff Dr. Lurie published and presented original research during his tenure at Defendant Kaiser. Topics included intra-abdominal abscess, diabetic foot infections, and outcomes for dialysis access. In 2005, he was awarded a research contract with Graftcath, Inc., to study the safety and efficacy of a new dialysis access device.

15. Plaintiff Dr. Lurie was concerned with improving the quality of practice to patients receiving care at Defendant Kaiser. He was on a total quality management team for over a year in the mid-90's, to improve the quality of patient services. He often raised quality of care issues with

his supervisors. However, rather than improving the quality of care, Defendant Kaiser would often conduct no investigation and would retaliate against him. Such incidents included the following:

(a) In 2002, Plaintiff Dr. Lurie was reprimanded for having asked a supervisor for help with scheduling a medical procedure for a patient with an abnormal mammogram. After initially offering assistance, the supervisor denied having offered assistance and retaliated against Plaintiff Dr. Lurie for trying to arrange for the procedure. She placed a letter in his personnel file and ordered him to take a remedial medical records class. Meanwhile, there was a delay in diagnosis and treatment of this patient who returned with breast cancer a year later.

(b) In February 2003, Plaintiff Dr. Lurie learned that his service chief had threatened to fire him for raising a quality of care issue by another physician who had failed to prepare an evaluation and treatment plan before conducting surgery. The other physician was discharged.

(c) In June 2003, Plaintiff Dr. Lurie was granted permission to raise quality concerns at a Washington Hospital Center meeting with area managers. Plaintiff Dr. Lurie raised may quality complaints including residents operating on patients without attending supervision in the building, patients being admitted and discharged without supervision, and patients being treated by unauthorized physicians without permission. Rather than investigating the complaints, Defendant Kaiser retaliated by giving Plaintiff Dr. Lurie a warning and reassigning him to a new office location in Prince George's County, Maryland.

(d) In February 2005, Plaintiff Dr. Lurie raised a quality concern with his service chief over poor access to gastroenterology services for diagnosis of colon cancer in a patient. The department was overwhelmed and could not see all of their cases. The patient was forced to wait so long that her cancer became widely invasive. He also raised issues about the delay in scheduling other patients for

surgery until more than a month after diagnosis of colon cancer, which caused delay in treatment. Plaintiff Dr. Lurie complained that the problem was organizational. No corrective action was taken.

16. In the fall of 2005, Plaintiff Dr. Lurie was informed by Defendant Dr. Phillips that his employment with Defendant Kaiser was being terminated. The reason given was alleged to be falsification of time records. He was presented with records that were not signed by him or by any manager. Plaintiff Dr. Lurie had followed the policies of Defendant Kaiser with regard to time records and there is no basis to the charge. The Maryland Office of Unemployment Insurance found that the evidence was insufficient. Indeed, Plaintiff Dr. Lurie's manner of keeping time records was consistent with Defendant Kaiser's own policies and procedures.

17. Defendant Kaiser's reason for termination, namely falsification of time records, was a pretext for unlawful discrimination based on age, as evidenced by the fact that Defendant Kaiser hired another younger physician to replace Plaintiff Dr. Lurie. Plaintiff Dr. Lurie filed a complaint with the U.S. Equal Employment Opportunity Commission (EEOC).

18. Plaintiff Dr. Lurie was a participant in a pension plan maintained by Defendant Kaiser. Upon information and belief, one of the determining factors causing his termination was Defendant Kaiser's desire to deprive Plaintiff Dr. Lurie of further participation in Defendant Kaiser's pension plan and to avoid the adverse economic impact which Plaintiff Dr. Lurie's continuation in the plan would cause. Such discrimination was for the purpose of interfering with Plaintiff Dr. Lurie's attainment of rights to which he was entitled under Defendant Kaiser's pension plan.

19. Since leaving Defendant Kaiser Plaintiff Dr. Lurie formed his own medical practice. Defendant Kaiser and the Individual Defendants interfered with the formation and operation of this medical practice, acting wrongfully and with malice, in the following respects: (a) Interfering with

patient referrals including patients with Medicare contracts, (b) taking patients away from Plaintiff Dr. Lurie that had previously been referred to him by Kaiser physicians, without his consent or permission and often against the patients' desires, and (c) failing to pay for services rendered to Kaiser patients referred by Kaiser physicians.  Defendant Kaiser through its employee, Defendant Dr. Phillips denied Plaintiff Dr. Lurie permission to join the Kaiser referring provider network, despite the fact that Plaintiff Dr. Lurie is credentialed and qualified for that group.  Such interference is having a harmful effect on Plaintiff Dr. Lurie's business.

20.  When terminated by Defendant Kaiser, Plaintiff Dr. Lurie was deprived of vacation pay, sick pay, retroactive pay increase, and bonuses from Defendant Kaiser for the year 2005 in the amount of $90,000, approximately.

CLAIMS

COUNT I

(Employment Discrimination – Age)

(Against Defendant Kaiser)

21.  Plaintiff Dr. Lurie hereby re-alleges and incorporates by reference paragraphs 1 through 20 above.

22.  At all times relevant to this Complaint, Defendant Kaiser was well aware of the provisions of the ADEA.  Defendant Kaiser acted willfully, maliciously and with reckless disregard of the law in depriving Plaintiff Dr. Lurie of employment, solely because of Plaintiff Dr. Lurie's age.

23.  Defendant Kaiser's reason for termination, namely falsification of time records, was a pretext for unlawful discrimination based on age, as evidenced by the fact that Defendant Kaiser hired another younger physician to replace Plaintiff Dr. Lurie.

8

24. Defendant Kaiser's termination of Plaintiff Dr. Lurie was unlawful under the ADEA with regard to discharge based on his age (48).

25. Plaintiff Dr. Lurie timely filed a complaint with the EEOC on or about February 26, 2006 (Charge No. 120-2006-00907), and exhausted his administrative remedies. On May 26, 2006, the EEOC issued a right to sue letter (the complaint and right to sue letter are attached and incorporated herein).

26. Plaintiff is entitled to damages against Defendant Kaiser to compensate him for unlawful discrimination under the ADEA.

COUNT II

(ERISA)

(Against Defendant Kaiser)

27. Plaintiff Dr. Lurie hereby re-alleges and incorporates by reference paragraphs 1 through 26 above.

28. Plaintiff Dr. Lurie was deprived his rights under Section 510 of ERISA and he has the right to enforce such rights under Section 502 of ERISA.

29. Plaintiff Dr. Lurie was a participant in a pension plan maintained by Defendant Kaiser. Upon information and belief, one of the determining factors causing his termination was Defendant Kaiser's desire to deprive Plaintiff Dr. Lurie of further participation in Defendant Kaiser's pension plan and to avoid the adverse economic impact which Plaintiff Dr. Lurie's continuation in the plan would cause. Such discrimination was for the purpose of interfering with Plaintiff Dr. Lurie's attainment of rights to which he was entitled under Defendant Kaiser's pension plan, contrary to the provisions of Section 510 of ERISA.

30. Plaintiff Dr. Lurie is entitled to the remedies under Section 502 of ERISA.

## COUNT III

(Wrongful Discharge)

(Against Defendant Kaiser)

31. Plaintiff Dr. Lurie hereby re-alleges and incorporates by reference paragraphs 1 through 30 above.

32. Defendant Kaiser failed failed to follow their own policies and procedures by failing to charge Plaintiff Dr. Lurie with an offense recognized under its policies and procedures, and failing to offer Plaintiff Dr. Lurie compensation required under its policies and procedures for terminations without cause.

33. Such termination was wrongful and against public policy, thereby entitling Plaintiff Dr. Lurie to compensation.

## COUNT IV

(Breach of Contract)

(Against Defendant Kaiser)

34. Plaintiff Dr. Lurie hereby re-alleges and incorporates by reference paragraphs 1 through 33 above.

35. In April 2005, Graftcath, Inc., a Delaware Corporation entered into an agreement with Defendant Kaiser and Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. to employ Plaintiff Dr. Lurie as a principal investigator to perform certain clinical evaluations and investigations (the "Contract").

10

36.  The term of the Contract was for two years, beginning in May 2005, and ending in May 2007.

37.  The Contract was expressly made for the benefit of Plaintiff Dr. Lurie as the principal investigator, and Plaintiff Dr. Lurie was intended to be a primary beneficiary of the contract, thereby entitling Plaintiff Dr. Lurie to enforce the Contract.

38.  Defendant Kaiser breached the Contract when it terminated Plaintiff Dr. Lurie in October 2005, and, thereby, making it impossible for Plaintiff Dr. Lurie to perform the Contract.

39.  Plaintiff Dr. Lurie's early termination by Defendant Kaiser in October 2005 deprived Plaintiff Dr. Lurie of the benefit of the Contract.  Plaintiff Dr. Lurie is entitled to damages.

## COUNT V

### (Breach of Implied Contract)

### (Against Defendant Kaiser)

40.  Plaintiff Dr. Lurie hereby re-alleges and incorporates by reference paragraphs 1 through 39 above.

41.  The term of the Contract implies that Dr. Plaintiff Lurie had an employment agreement with Defendant Kaiser for the duration of that two-year Contract.

42.  Consequently, Defendant Kaiser breached the implied two-year employment agreement with Plaintiff Dr. Lurie when it terminated him in October 2005.

43.  Plaintiff Dr. Lurie is entitled to compensation for the remainder of his two-year employment agreement with Defendant Kaiser.

## COUNT VI

### (Interference with Business and Unfair Competition)

11

(Against Defendant Kaiser and the Individual Defendants)

44. Plaintiff Dr. Lurie hereby re-alleges and incorporates by reference paragraphs 1 through 43 above.

45. Defendant Kaiser and the Individual Defendants are interfering with the formation and operation of the Plaintiff Dr. Lurie's medical practice, and are engaging in unfair competition by failing to allow Plaintiff Dr. Lurie to treat hospital patients from Kaiser.

46. Such acts consist of:  (a) Interfering with patient referrals including patients with Medicare contracts, (b) taking patients away from Plaintiff Dr. Lurie that had previously been referred to him by Kaiser physicians, and (c) failing to pay for services rendered to Kaiser patients referred by Kaiser physicians. Such acts are without Plaintiff Dr. Lurie's consent or permission and often against the patients' desires.  In addition, Defendant Kaiser through its employee, Defendant Dr. Phillips, denied Plaintiff Dr. Lurie permission to join the Kaiser referring provider network despite the fact that Plaintiff Dr. Lurie is credentialed and qualified for that group.

47. Such acts by Defendant Kaiser and the Individual Defendants, which are being committed wrongfully and with malice, are continuing and are having a harmful effect on Plaintiff Lurie's business.  Defendant Kaiser is liable for its own actions, and for the actions of each of the Individual Defendants as employees of Defendant Kaiser under the doctrine of respondeat superior. The Individual Defendants are also directly liable to Plaintiff Dr. Lurie for their own actions.

48. Plaintiff Dr. Lurie is entitled to damages and injunctive relief.

PRAYER FOR RELIEF

49. WHEREFORE, Plaintiff Dr. Lurie prays for judgment against Defendant Kaiser and the Individual Defendants as follows:

12

(a)     For money damages from Defendant Kaiser in the amount of Eight Hundred Thousand Dollars ($800,000);

(b)     For vacation pay, sick pay, retroactive pay increases, and bonuses from Defendant Kaiser for the year 2005 in the amount of $90,000, approximately;

(c)     For injunctive relief prohibiting Defendant Kaiser and the Individual Defendants from interfering with Plaintiff Dr. Lurie's practice of medicine; requiring Defendant Kaiser to admit Plaintiff Dr. Lurie to the Kaiser referring provider network and pay for services rendered to Kaiser patients; and, requiring Defendant Kaiser to correct Plaintiff Dr. Lurie's personnel record;

(d)     For Plaintiff Dr. Lurie's costs of suit incurred herein, including costs and reasonable attorney's fees and interest; and,

(e)     For such other further relief as the Court may deem just and proper.

Dated:  August 3, 2006.

                    Respectfully submitted,

                    DEAN KEVIN LURIE, MD ("Plaintiff")

By: _____
                    James S. Bubar, Esq
                    (DC Bar No. 321125)
                    1776 K Street, NW, Suite 800
                    Washington, DC 20006
                    (202) 223-2060

                    His Counsel

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: August 3, 2006.

13

Respectfully submitted,

DEAN KEVIN LURIE, MD ("Plaintiff")

By: _____
     James S. Bubar, Esq
     (DC Bar No. 321125)
     1776 K Street, NW, Suite 800
     Washington, DC 20006
     (202) 223-2060

     His Counsel

## **VERIFICATION**

District of Columbia   ) ss.:

I, Dean Kevin Lurie, being duly sworn, depose and say that I am the Plaintiff herein and that I have each read the foregoing Complaint and know the contents thereof and that the allegations contained in the Complaint are true of my own knowledge except as to the maters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Executed on  8 · 3 · , 2006.

By: _____
     Dean Kevin Lurie, MD

Subscribed and sworn before me this ___3rd___ day of __August__, 2006.

_____
Notary Public

My commission expires: ___10 · 14 · 06___

MICHAEL NEWTON
A Notary Public, District Of Columbia
My Commission Expires October 14th, 2006

14