IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEAN KEVIN LURIE, M.D.                    *

            Plaintiff,                    *

              V.                              *          Civil Action No.:  1:06CV01386

MID-ATLANTIC PERMANENTE MEDICAL  *          Judge:  Royce C. Lamberth
GROUP, P.C., ET AL
                          *

            Defendant.                    *

  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## INDIVIDUAL DEFENDANTS' REPLY TO OPPOSITION TO
## TO DISMISS FOR LACK OF PERSONAL JURISDICTION

      Defendants, Yancy Phillips, M.D. ("Dr. Phillips"), Jacob Lustgarten, M.D. ("Dr. Lustgarten")

and Behdad Aryavand, M.D. ("Dr. Aryavand") (collectively, "the Individual Defendants"), reply as

follows to Plaintiff's opposition to their motions to dismiss.

## INTRODUCTION

      Plaintiff filed a six-count complaint.  Only Count VI, which purports to state a claim for

interference with business and unfair competition, is directed towards the Individual Defendants.

Plaintiff cited the District of Columbia Long-Arm Statute as the purported basis for hailing the

Individual Defendants into this Court, however, he makes no jurisdictional allegations in the Complaint.

The Individual Defendants filed motions to dismiss the Complaint based on lack of personal jurisdiction

over them.[1]  Plaintiff has opposed those motions by cobbling together a mixture of inadmissible hearsay,

---

[1] Drs. Phillips and Lustgarten filed their motion on September 5, 2006.  (Docket Document No. 3).  Dr. Aryavand, who was
not served until after that date, filed a separate motion to dismiss on September 21, 2006. (Document 7).  Plaintiff's
Opposition addresses both motions.

inapposite law and irrelevant facts. For the reasons set forth in the Individual Defendants' initial

memoranda, and as further set forth below, their motions to dismiss should be granted.

**I.     PLAINTIFF FAILS TO ESTABLISH GENERAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.**

In his Complaint, Plaintiff sought to establish jurisdiction over the Individual Defendants solely

based on the District of Columbia long-arm statute. D.C. Code §13-423. See Complaint at ¶1. Plaintiff

did not assert that the Individual Defendants were subject to general jurisdiction under D.C. Code § 13-

422. Because Plaintiff failed to allege any jurisdictional facts, general jurisdiction could not be found to

exist on the face of the Complaint. *Richard v. Bell Atlantic Corp., Inc.,* 976 F.Supp. 40, 49 (D. D.C.

1997) (court lacks personal jurisdiction where plaintiff pleads no allegations regarding the residence or

principal place of business of an individual defendant). Plaintiff concedes in the Complaint that none of

the Individual Defendants resides in the District and he does not allege that any of them maintained a

"principal place of business" there. *See, Pollack v. Meese,* 737 F. Supp. 663, 665 (D. D.C. 1990) (where

individual defendants neither reside nor maintain a principal place of business in the District of

Columbia, no general jurisdiction under D.C. Code §13-422 exists).

In his opposition, Plaintiff now claims that general jurisdiction exists over the Individual

Defendants because they sometimes work or have worked in the District. Plaintiff is wrong.

**A.     <u>Dr. Phillips Is Not Subject To General Jurisdiction.</u>**

Dr. Phillips is the Senior Associate Medical Director of Operations for Defendant, Mid-Atlantic

Permanente Medical Group, P.C. ("MAPMG"). He resides in Virginia and his only office is located at

MAPMG's Rockville, Maryland headquarters. (Phillips Aff. at ¶¶2-3 and Complaint at ¶7). Plaintiff

concedes that Dr. Phillips' office is in Rockville[2], but contends that general jurisdiction exists because Dr. Phillips "has responsibility" for medical offices located at 1011 North Capitol Street, NE, 110 Irving Street, NW, and 2100-W Pennsylvania Avenue, N.W. (Lurie Aff. at ¶7.) Plaintiff is misleading the Court.

The North Capitol and Pennsylvania Avenue locations are medical centers owned and operated by the Kaiser Foundation Health Plan of the Mid-Atlantic States ("the Health Plan"), which is not a party to this case, not by MAPMG. (Supplemental Affidavit of Yancy Phillips ("Phillips Supp. Aff." at ¶3, attached as Exhibit 1). The Irving Street location is a physicians' office building on the campus of Washington Hospital Center, which are leased by the Health Plan. (Phillips Supp. Aff. at ¶3). While MAPMG physicians who provide services in the District use offices at those locations, Plaintiff presents no evidence (other than his naked assertion) that Dr. Phillips is "responsible" for the properties. More important, Plaintiff's claims about the offices is a smokescreen.

Plaintiff concedes that *Dr. Phillips* does not maintain a principal place of business at any of those locations. (Lurie Aff. at ¶7). Indeed, Plaintiff states only that "I saw Dr. Phillips periodically for medical updates at the North Capitol Street Office." Plainly, periodic sightings of a person in the district is not enough to establish general jurisdiction. *See, e.g., Flocco v. State Farm Mut. Automobile Ins. Co.*, 752 A.2d 147,164, n.23 (D.C. 2000)(occasional visits to the District of Columbia for meetings unrelated to the litigation is insufficient to establish that the defendant maintained a principle place of business in the District). Accordingly, Plaintiff has failed to establish that the Court can assert general jurisdiction over Dr. Phillips.

---

[2] See Affidavit of Dean Kevin Lurie ("Lurie Aff.") at ¶ 7.

3

**B.      Dr. Aryavand Is Not Subject To General Jurisdiction.**

Dr. Aryavand is a citizen and resident of Virginia. (Affidavit of Behdad Aryavand attached as Exhibit 2 to his Memorandum in Support of Motion to Dismiss, at ¶¶2-3 and Complaint at ¶3). Dr. Aryavand was formerly employed as a surgeon by MAPMG, but he terminated his employment relationship with it before he was served with the Complaint. (Aryavand Aff. at ¶4.) Dr. Aryavand neither resides nor maintains a principal place of business in the District of Columbia. (Aryavand Aff. at ¶3).

Plaintiff concedes that Dr. Aryavand no longer works for MAPMG, and does not contend that he presently works, resides, or maintains a principal place of business in the District. This Court has held that a defendant who does not reside or have a principal place of business in the District at the time he is served with process is not subject to general jurisdiction. *Valdes v. Gordon,* 949 F. Supp. 21, 24-25 (D. D.C. 1996), *aff'd,* 1997 WL 404719 (D.C. Cir. 1997) (court would not have jurisdiction over defendant pursuant to D.C. Code §13-422 because he does not currently reside or work in the District). Thus, even if Dr. Aryavand's prior contacts were sufficient to support general jurisdiction, which they are not, he is not now subject to general jurisdiction in this Court.

**C.      Dr. Lustgarten Is Not Subject to General Jurisdiction.**

Plaintiff argues that Dr. Lustgarten is subject to general jurisdiction in the District because he performs medical services at the Health Plan's offices there. That fact is not sufficient to establish, as Plaintiff must, that Dr. Lustgarten "maintains a principal place of business" in the District.

Neither the general jurisdiction statute (D.C. Code §13-422) nor the case law specifies what it means for an individual defendant to "maintain a principal place of business" in the District. Dr. Lustgarten, however, provides medical services to patients in the District of Columbia only as an

4

employee of MAPMG and not in his individual capacity. (Lustgarten Aff. at ¶4). In addition, Dr. Lustgarten also provides medical services to MAPMG patients in Maryland and has an office at Holy Cross Hospital. (Lustgarten Aff. at ¶ 2).

Plaintiff claims that Dr. Lustgarten "maintains a principal place of business" in the District because he provides services at the "POB" (Physicians Office Building) at Washington Hospital Center. (Opp. at 6-7 and Lurie Aff. at ¶4). Like all MAPMG-employee physicians, Dr. Lustgarten is provided with office space by the Health Plan at various locations which it owns or leases. (Lustgarten Supp. Aff. at ¶2, attached hereto as Exhibit 2). Those offices are not owned, leased, or otherwise "maintained" by Dr. Lustgarten or MAPMG. (Lustgarten Supp. Aff. at ¶2). Instead, the offices are leased by the Health Plan and made available to MAPMG for use by its doctors. (Phillips Sup. Aff. at ¶3). Plaintiff submits a computer print-out from the Washington Hospital Center website stating that Dr. Lustgarten's primary office is at Washington Hospital Center, while his secondary office is at Holy Cross. (Lurie Aff., Attachment B). Obviously, the document does not reflect Dr. Lurie's personal knowledge. It is rank hearsay and must be disregarded by the Court. *See, e.g., Clerc v. Cantoni, Inc.*, 2002 WL 1482769, *1-4 (S.D. N.Y. 2002)(court rejected hearsay statement in affidavit submitted by plaintiff in response to motion to dismiss for lack of personal jurisdiction); *Strong v. RG Industries, Inc.*, 691 F.Supp. 1017, 1018-19 (S.D. Miss. 1988)(hearsay is inadmissible and not considered in response to motion to dismiss for lack of personal jurisdiction). Dr. Lustgarten has previously stated that he does not maintain a principal place of business in the District. (Lustgarten Aff. at ¶3). *See, e.g., Reserve Capital, LLC v. CLB Dynasty Trust 2002,* 2006 WL 1037321, *5 (N.D. Ill. 2006)(granting dismissal for lack of personal jurisdiction and holding that affidavit based on hearsay cannot be used to refute defendant's contrary

395799.1
10/10/2006

affidavit based on personal knowledge).  As a consequence, Plaintiff has failed to meet his burden of

demonstrating that Dr. Lustgarten is subject to general jurisdiction in the District.

## II.    THE INDIVIDUAL DEFENDANTS ARE NOT SUBJECT TO JURISDICTION UNDER THE LONG-ARM STATUTE.

Plaintiff argues that the Individual Defendants are subject to long-arm jurisdiction under D.C.

Code 13-423(a)(3) because they caused a tortious injury in the District by an act inside the District.  (Pl.

Opp. at 4).   For the reasons set forth below, Plaintiff has failed to establish jurisdiction under that

statute.

### A.    Plaintiff Failed To Show That Any Injury Occurred In The District.

Although Plaintiff claims that the Individual Defendants' alleged interference injured his

"medical practice," he assiduously avoids identifying where his practice exists.  Instead, Plaintiff merely

states that he *resides* in the District of Columbia and is *licensed to practice* there, Maryland, and

Massachusetts.  (Lurie Aff. at ¶10).  This is another sleight of hand by Plaintiff.

Plaintiff's place of residence and where he is licensed are irrelevant to determining jurisdiction

over the Individual Defendants.  (If the case were otherwise, Plaintiff might just as well assert that

jurisdiction is proper in Massachusetts).  Plaintiff's naked statement that "[t]his interference has caused

me injury in the District of Columbia" does not suffice in the absence of any evidence that he carries on

a current medical practice in the District, much less one that has suffered an injury due to the Individual

Defendants' alleged acts.  *Novak-Canzeri v. Saud*, 864 F. Supp. 203 (D. D.C. 1994)("a plaintiff may not

rest on bare allegations or conclusory statements alone and must make at least a *prima facie* showing if

it is to avoid dismissal for want of jurisdiction.")

What Plaintiff does not tell the Court is that in June 2006, he incorporated his business, Lurie

Surgical Services, *in Maryland*.  (See certified copy of Lurie Surgical Services Charter, attached as

6

Exhibit 3). Moreover, the stated purpose of Plaintiff's business is "[t]o engage in the general practice of medicine" and other activities as permitted by *Maryland* law. (Exhibit 3, third paragraph). Given that Plaintiff operates his medical practice as a *Maryland corporation*, it is not surprising that the *only* business address listed by the District of Columbia Board of Medicine for Dr. Lurie on his Licensee listing is in *Silver Spring, Maryland,* about 1.5 miles from Holy Cross Hospital. (See Exhibits 4 and 5).

On information and belief, Plaintiff has not incorporated his medical practice in the District of Columbia and, in any event, does not assert that he has. Indeed, notably absent from Plaintiff's pleadings is any claim that he even provides medical services in the District. MAPMG is not aware of whether Plaintiff currently has privileges at any District hospital and it would not be surprising if he no longer provides medical services in the District. (Phillips Supp. Aff. at ¶6). MAPMG was twice asked by Washington Hospital Center to reassign Plaintiff to another facility. In 2001, the Hospital asked that Plaintiff be reassigned because of his disruptive behavior. (Philips Supp. Aff. at ¶5 and Exhibit A thereto). In 2003, following a brief return to that facility, Washington Hospital Center again asked that Plaintiff be reassigned because of three patient care events. (Phillips Supp. Aff. at ¶3 and Exhibit B thereto). Finally, in November, 2003, the Hospital informed Dr. Lurie and MAPMG that because of "the tension, concern and sense of unsafety that [his] presence created among the surgical residents," the Hospital would no longer allow its surgical residents to participate in the care of Dr. Lurie's patients. (Phillips Supp. Aff. at ¶5 and Exhibit C, thereto). Because assistance from surgical residents is an integral part of providing services at Washington Hospital Center, the Medical Group was left with no option but to reassign Dr. Lurie to the Health Plan's Largo, Maryland medical center. (Phillips Supp. Aff. at ¶5; Complaint at ¶15(c)).

7

Although MAPMG is aware that Plaintiff has claimed that MAPMG's physicians have interfered with his medical practice at Holy Cross Hospital in Maryland, MAPMG is unaware of any claim by him that it has interfered with his practice of medicine in the District of Columbia. (Phillips Supp. Aff. at ¶6). In sum, even assuming that Plaintiff has identified acts by the Individual Defendants which could constitute interference with his business (he has not), none of those acts caused an injury *in* the District of Columbia, as must be shown to sustain personal jurisdiction over them.

**B.      Plaintiff Has Not Established That His Interference Claim Arises Out Of The Same Facts Which Establish The Individual Defendants' Alleged Contacts With The District.**

As the Individual Defendants demonstrated in their initial memorandum, to establish jurisdiction under the long-arm statute, Plaintiff must show that his interference claim arises out of the same facts which establish the Individual Defendants' contacts with the District of Columbia. D.C. Code §13-423(b) ("[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.") See also, *Comsat Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 520 (D. D.C. 1995) ("plaintiff's jurisdictional allegations must arise from the same conduct of which the plaintiff complains." Plaintiff has plainly failed to satisfy this burden.

**1.      Dr. Phillips**

The only allegedly wrongful act by Dr. Phillips which Plaintiff identifies, was the decision not to allow Plaintiff to join MAPMG's outside provider network. (Complaint at ¶19). Again, the record is bereft of evidence that Plaintiff suffered a cognizable injury as a result of this act, much less an injury *in the District*. Moreover, it is difficult to imagine any circumstances under which it would be considered "tortious interference" for an entity to refuse to contract with someone to provide personal services –

395799.1
10/10/2006

much less a former employee who was fired by the entity for committing fraud.  Not surprisingly, Plaintiff cites no authority to the contrary.

### 2.    Drs. Lustgarten and Aryavand

Plaintiff submits the affidavits of two patients, Geraldine Edwards and Judy Gantt, both of whom state that they were seen as patients by Drs. Lustgarten and Aryavand at the Health Plan's office at Washington Hospital Center.  (Plaintiff's Opp., Exhibits 2 and 3).  Those patients state that Drs. Lustgarten and Aryavand "discouraged" them from seeing Plaintiff because their insurance would not cover treatment by him, a former MAPMG physician who, as he repeatedly concedes, is *not* a participant in MAPMG's outside provider network.  Nevertheless, Ms. Edwards and Ms. Gantt admit that they subsequently obtained treatment from Plaintiff despite the alleged discouragement by Drs. Lustgarten and Aryavand.  (Edwards and Gantt Affidavits at ¶¶5-6, attached as Exhibits 2 and 3 to Plaintiff's Opp.).

Even if true, these alleged acts do not constitute tortious "interference" with Plaintiff's medical practice under either Maryland or District of Columbia law.  Both jurisdictions require, *inter alia,* that Plaintiff establish that: (1) he had a contractual relationship with a third party; (2) Drs. Lustgarten and Aryavand intentionally engaged in improper conduct which resulted in the third party's breach or inability to perform the contract with Plaintiff; and (3) he suffered damages as a result.  *See, e.g., Orfanos v. Athenian, Inc.,* 505 A.2d 131, 138-39 (Md. App. 1986); *Alakananda Paul v. Howard University,* 754 A.2d 297, 308-09 (D.C. 2000).  Plaintiff produces no evidence to show that he had a contractual relationship with Ms. Gantt or Ms. Edwards.  Moreover, even assuming that Plaintiff did enjoy a contractual relationship with those patients, and that the alleged discouraging words of Drs. Lustgarten and Aryavand could be considered improper, Ms.Gantt and Ms. Edwards clearly state in their

9

affidavits that they continued to seek treatment from Plaintiff. Thus, Plaintiff adduces no evidence of acts by Drs. Lustgarten and Aryavand which induced a third party to breach a contractual commitment to him, or which caused him damages, let alone damages to any business interest he has in the District.

**C.**    **Plaintiff Alleges No Facts Showing That The Individual Defendants Acted In Their Individual Capacities.**

The Individual Defendants discussed at length in their initial memoranda this Court's decisions holding that jurisdiction does not exist over an individual officer of a corporation simply because the Court has personal jurisdiction over the corporate entity, and that jurisdictional facts involving and individual defendant's duties for a corporate defendant are insufficient to establish personal jurisdiction over them. Plaintiff identifies no acts by the Individual Defendants in the District or elsewhere which were taken in their individual capacities.

The only tortious act Dr. Phillips is accused of taking is refusing to allow Plaintiff to join MAPMG's provider network. Dr. Phillips could take that action only as an employee of MAPMG, not in his individual capacity.

Similarly, the only wrongful acts Drs. Lustgarten and Aryavand are alleged to have taken are their discussions with the two patients "discouraging" them from seeing Plaintiff because his services were no longer covered by the Health Plan. Again, Drs. Lustgarten and Aryavand engaged in that conduct, even if true, in their capacity as employees of MAPMG, not as individuals. Both physicians have stated that they have only seen patients in the District as employees of MAPMG, (Lustgarten Aff. at ¶4; Aryavand Aff. at ¶4), and Ms. Gantt and Ms. Edwards state that they saw Drs. Lustgarten and Aryavand at the Health Plan's Washington Hospital Center offices. Indeed, seemingly contradicting the assertion that those defendants acted as individuals, Plaintiff actually states that MAPMG is responsible for their actions under the doctrine of *respondeat superior*. (Pl. Opp. at 6.)

10

In *Wiggins v. Equifax, Inc.,* 853 F. Supp. 500, 503 (D. D.C. 1994)(Lamberth, J.), this Court held that "[p]ersonal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity. Thus, the corporation ordinarily insulates the individual employee from the court's personal jurisdiction." Plaintiff argues that *Wiggins* is inapposite because the Court did not consider D.C. Code §13-423(a)(3), which conveys jurisdiction over persons who cause tortious injury in the District by acts in the District. That argument is misplaced.

Although *Wiggins* dealt with § 13-423(a)(4), which conveys jurisdiction over persons who cause tortious injury in the District by acts *outside* the District, Plaintiff makes a distinction without a difference. The Court's holding that individual defendants are insulated from personal jurisdiction does not turn on where the allegedly tortious act took place. The critical inquiry is whether the defendant was acting in his own capacity or in a corporate capacity. As previously pointed out, Plaintiff has not alleged a single fact demonstrating that any of the Individual Defendants were acting in any capacity other than their roles as employees of MAPMG. Thus, Plaintiff has failed to establish jurisdiction under the Long-Arm Statute.

## CONCLUSION

For the reasons stated above and in the Individual Defendants' initial memoranda, the Individual Defendants ask the Court to grant their motions to dismiss for lack of personal jurisdiction.

Respectfully submitted,

_____/s/_____
R. Michael Smith (DC Bar #372654)

_____/s/_____
Charles R. Bacharach (DC Bar #448842)

11

Gordon, Feinblatt, Rothman,
   Hoffberger & Hollander, LLC
233 East Redwood Street
Baltimore, Maryland 21202
410/576-4174
msmith@gfrlaw.com
410/576-4169
cbacharach@gfrlaw.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of October, 2006, a copy of the foregoing Individual

Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss for Lack of Personal Jurisdiction was

served electronically on James S. Bubar, Esq., 1776 K Street, NW, Suite 800, Washington, DC 20006.


_____ /s/ _____
Charles R. Bacharach

395799.1
10/10/2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEAN KEVIN LURIE, M.D.                         *

              Plaintiff,                          *

            v.                                   *          Civil Action No.: 1:06CV01386

MID-ATLANTIC PERMANENTE MEDICAL  *          Judge: Royce C. Lamberth
GROUP, P.C., ET AL
                                *
              Defendant.                          *

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

**<u>SUPPLEMENTAL AFFIDAVIT OF YANCY PHILLIPS, M.D.</u>**

      1.     I am over eighteen (18) years of age and competent to testify, on personal knowledge, as to the matters set forth herein.

      2.     The Mid-Atlantic Permanente Medical Group, P.C. ("MAPMG"), is a Maryland professional corporation which employs physicians who provide medical services to the patient members of the Kaiser Foundation Health Plan of the Mid-Atlantic States (the "Health Plan").

      3.     MAPMG employee physicians provide these medical services at various locations owned and/or leased by the Health Plan. The offices identified by Plaintiff at 1011 North Capitol Street, N.E., and 2100-W Pennsylvania Avenue, N.W. are medical centers maintained and operated by the Health Plan. The offices located at 110 Irving Street, N.W. are offices in a physician's office building on the campus of Washington Hospital Center which are leased by the Health Plan. MAPMG does not lease, own or operate offices at any of these locations.

      4.     Dr. Lustgarten is one of the physicians who has office space at the Health Plan's offices at the Washington Hospital Center physician office building.

*Exhibit 1*

*Individual Defendants' Reply to Opposition*

5.       MAPMG was twice asked by Washington Hospital Center to reassign Dr. Lurie to another facility.  In 2001, the Hospital asked that Dr. Lurie be reassigned because of his disruptive behavior.  (See Exhibit A, attached).   In September, 2003, following his return to the Hospital after a short reassignment, the Hospital again asked that Dr. Lurie be reassigned because of three patient care events.  (See Exhibit B, attached).  In November, 2003, the Hospital informed Dr. Lurie and MAPMG that because of "the tension, concern and sense of unsafety that [his] presence created among the surgical residents," the Hospital would no longer allow its surgical residents to participate in the care of Dr. Lurie's patients.  (See Exhibit C, attached). Because assistance from surgical residents is an integral part of providing services at Washington Hospital Center, the Medical Group was left with no option but to reassign Dr. Lurie to the health Plan's Largo, Maryland medical center.  Exhibits A, B and C to this Supplemental Affidavit are true and correct copies of letters received by MAPMG from Washington Hospital Center asking that Dr. Lurie be reassigned.  These documents were received by MAPMG at or near the time of the events described therein.  The letters were kept in the course of the Medical Group's regularly conducted business activities as part of Dr. Lurie's personnel records and it is the regular practice of the Medical Group to make and keep such records.

6.       MAPMG is not aware of whether Dr. Lurie currently has privileges at any hospital in the District of Columbia.  In any event, although MAPMG is aware of several instances of when Dr. Lurie has claimed that the Medical Group had interfered with his ability to provide medical services to patients at Holy Cross Hospital, it is unaware of any instance in

2

which Dr. Lurie has claimed that the Medical Group or any of its physicians has interfered with his ability to perform medical services in the District of Columbia.

I AFFIRM, under penalty of perjury that the forgoing is true and correct.

Dated: October __9th__, 2006.

_Yancy Phillips, MD_
Yancy Phillips, M.D.



**John R. Kirkpatrick, MD**
*Harold H. Hawfield Chair of Surgery*

# Washington
# Hospital Center

**Surgery**
110 Irving Street, NW, Suite NAG-253
Washington, DC 20010-2975

June 22, 2001

*phone:* 202 877 5133
*fax:* 202 877 3699

Darrell B. Manning, M.D.
General Surgery Clinic, Building 2
10810 Connecticut Avenue
Kensington, MD 20895

Dear Darrell,

I regret that I must ask you to reassign Dr. Kevin Lurie to a Kaiser practice site other than the Washington Hospital Center. During the past four years, it has become clear that Dr. Lurie's involvement at the Washington Hospital Center is not productive to the Department, the surgical residency, his co-workers or the Kaiser-WHC relationship. There have been periods of time during the last four years when Dr. Lurie has not been active at WHC. During these times, Kaiser-WHC relations within the Department of Surgery are quite smooth; issues of mutual concern are discussed and resolved in a mature thoughtful manner. Dr. Lurie's presence incites the opposite outcome . . . discord, hyperbole and increasing tension.

Furthermore, Dr. Lurie's practice style in and out of the operating room has created tension and concern among the surgical residents. Quite frankly, they view Dr. Lurie as being an "unsafe" surgeon. I am sure Dr. Lurie senses this resident resistance to his management style which in turn provokes a "strike back" response from him. This is reflected in a recent letter (enclosed with this correspondence) distributed at the Kaiser-WHC surgical oversight committee meeting.

Please be assured that this request for reassignment is not made lightly. I wish no professional harm for Dr. Lurie; however, it is my strong opinion that the importance of the Kaiser-WHC relationship to both parties mandates that the surgical players from both sides act in a thoughtful, mature manner. Regrettably, based on past performance, I do not believe that Dr. Lurie can meet this minimum performance standard. Should you have additional questions regarding my views, I, of course, will be happy to discuss them with you.

Sincerely yours,

John R. Kirkpatrick, M.D.

CC.   Michael Covert
      Wm. James Howard, M. D.

*Exhibit 1-A*
*Individual Defendants' Reply to Opposition*

C:\LJF\ATTNDNGS\Manning Darrell.doc

*MedStar Health*

Case 1:05-cv-01383-RBW   Document 10    Filed 10/16/2006    Page 17 of 28



John R. Kirkpatrick, MD
Harold H. Hawfield Chair of Surgery
Professor of Surgery
Georgetown University
School of Medicine

Professor of Surgery
Uniformed Services University of the
Health Services

Department of Surgery

# Washington Hospital Center

September 9, 2003


Darrell B. Manning, M.D.
General Surgery Clinic, Building 2
10810 Connecticut Avenue
Kensington, MD 20895

RE:   D. Kevin Lurie, M.D.

Dear Dr. Manning:

This letter summarizes our conversation of 9/5/2003 and 9/8/2003 regarding the above named physician. As you know, several years ago we requested that Dr. Lurie not be assigned to the Washington Hospital Center, feeling that his talents were not a good fit with our institution. Initially, everyone was in agreement with this request and Dr. Lurie did not work at our institution for some months.

Within the last year, presumably because of needs within the Kaiser Permanente system, Dr. Lurie has once again begun to work at the Washington Hospital Center. Regrettably, I must advise you of three patient care events, which once again prompts me to request that Dr. Lurie be assigned elsewhere. To summarize these cases:

- A patient known to be HIV+ was undergoing cholecystectomy. The resident assisting Dr. Lurie, Dr. Jonah Murdock, was stuck by Dr. Lurie with a needle during the case. This has required HIV prophylaxis for Dr. Murdock; however, it was Dr. Lurie's attitude toward Dr. Murdock that prompted Dr. Murdock to complain . . . i.e., no apology was ever rendered for the needle stick. In fact, when Dr. Murdock was assigned to help Dr. Lurie on a subsequent case, Dr. Lurie asked Dr. Murdock not to scrub . . . the exchange was unpleasant enough that Dr. Murdock sensed that he was not welcome.

- The second case involved a patient with cirrhosis who underwent cholecystectomy. This case was reviewed at the Departmental Mortality and Morbidity Conference and found to be below standards of care. It has been referred to the Departmental Practice Committee for further review. To summarize, no tests were done that confirmed the presence of acute cholecystitis. At surgery, cirrhosis was obvious. Despite this, a liver biopsy was performed. Post-operatively, the patient was not transferred to the surgery service. During the night the patient experienced exsanguinating hemorrhage and arrested the following morning. The patient required resuscitation, intubation and has not done well since.

*Exhibit 1-B*

*Individual Defendants' Reply to Opposition*

C:\LJF\ATTNDNG5\Manning Darrell.doc          *MedStar Health*

110 Irving Street, NW, Suite NAG 253, Washington, DC 20010-2975
phone: 202 877 5133 • fax: 202 877 3699 • e mail: john.r.kirkpatrick@medstar.net

SEP-15-2003 13:54 FROM:SURGERY/ORTHO          7039221199          TO:3018167472          P.2/2

SEP. -15' 03 (MON) 13:35 KAISER PERMANENTE      Case 1:06-cv-01386  Document 10      Filed 10/10/2006  929-3092  Page 18 of 28      P. 003

*Darrell B. Manning, M.D.*                          **2**                          *9/9/03*

- Over the weekend, another problem has occurred in a patient with large bowel obstruction. Following an interchange between Dr. Lurie, the patient and family, a request was made by the family for a new surgeon. Since the patient was a Kaiser patient, the residents asked Dr. Lurie to contact another Kaiser surgeon to take over the case. Dr. Lurie informed them that he could not find any surgeon to take over the case and perhaps the patient should sign out against advice. This recommendation obviously, was not appropriate. You were contacted, and arranged for surgery the following day by Dr. Lurie. The patient required surgery sooner than that. Dr. John Butler, an attending in the Department of Surgery, contacted Dr. Lurie to emphasize the need for surgery. Finally, the patient was operated upon that night under the management of Dr. Dennis Wang, who was in the hospital at that time. Apparently, things went well surgically and the patient is doing well.

This is a large acute care hospital with an active surgical service and a deep commitment to graduate medical education. The ability to interact in this environment and to seek and gain the respect of the resident staff is paramount for good patient care and collegial relations. For whatever the reasons, it continues to appear that it is a bad fit between Dr. Lurie and our institution. We are strongly recommending that Dr. Lurie be assigned to some other institution within the Kaiser system to avoid further events such as those described above. Should you require additional information, please feel free to contact me.

Sincerely,

John R. Kirkpatrick, M.D.

Harold H. Hawfield, Chair of Surgery
Professor of Surgery
Georgetown University
School of Medicine

Professor of Surgery
Uniformed Services University of the
Health Services

**Department of Surgery**



# Washington
# Hospital Center

November 6, 2003

Kevin D. Lurie, M.D.
Kaiser Permanente
1011 N. Capitol Street, N.E.
Washington, DC 20002

Dear Dr. Lurie:

This letter is written to inform you that effective immediately, November 6, 2003, the surgical residents at the Washington Hospital Center will no longer participate in the care of your patients. Please be aware that the responsibility for admissions, histories and physicals, physician orders, progress notes, day-to-day monitoring of the progress of your patients and discharge instructions will be yours. For those operative cases requiring a physician assistant, you must provide the name of this individual at the time that you schedule the surgical procedure. If a life or death emergency arises in one of your patients, of course, our residents or hospital resuscitation team will respond promptly.

This action results from a persistent breakdown in your relations with the surgical residency dating back at least to 2001. You have been made aware of the tension, concern and sense of unsafety that your presence has created among the surgical residents. Regrettably, nothing has been done on your part to improve this situation.

*Exhibit 1-C*
*Individual Defendants' Reply to Opposition*

C:\JF\ATTNDNGS\LURIE.doc

*MedStar Health*
110 Irving Street, NW, Suite NAG 253, Washington, DC 20010-2975
phone: 202 877 5133 • fax: 202 877 3699 • e mail: john.r.kirkpatrick@medstar.net

Kevin D. Lurie, M.D.
November 6, 2003
Page 2

The crescendo of abusive behavior referred to in letters of June 22, 2001 and
September 9, 2003 has failed to elicit a positive response from you.  This has never
been more apparent than in the events surrounding the case of Ms. Henrietta Jones.
Your interactions and behavior with the residents assigned to this case necessitates
termination of any relationship between the surgical residency and your practice.

Should you have any questions regarding the contents of this letter, please feel free to
contact me.

Sincerely Yours,

John R. Kirkpatrick, M.D.
Chairman, Department of Surgery

cc:    James Howard, M.D.
       Darrell Manning, M.D.
       Dan Schwartz, M.D.

C:\LJF\ATTNDNGS\LURIE.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEAN KEVIN LURIE, M.D.                    *

        Plaintiff,                    *

          v.                           *      Civil Action No.:  1:06CV01386

MID-ATLANTIC PERMANENTE MEDICAL *     Judge:  Royce C. Lamberth
GROUP, P.C., ET AL
                                *
        Defendant.                   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### SUPPLEMENTAL AFFIDAVIT OF JACOB LUSTGARTEN, M.D.

      1.     I am over eighteen (18) years of age and competent to testify, on personal knowledge, as to the matters set forth herein.

      2.     Space is made available to MAPMG employee physicians, including myself, to provide medical services at various locations owned and/or leased by the Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("the Health Plan").  The offices identified by Plaintiff at 1011 North Capitol Street, N.E., and 2100-W Pennsylvania Avenue, N.W. are medical centers maintained and operated by the Health Plan.  The offices located at 110 Irving Street, N.W. are offices in a physician's office building on the campus of Washington Hospital Center which are leased by the Health Plan.  I do not lease, own or operate an office at any of these locations.

      3.     When a patient expresses an interest in seeing any non-network physician, including Dr. Lurie, for services which could be provided by a MAPMG physician, I tell the patient that they are able to see the physician, but that as he or she is a non-network provider I

*Exhibit 2*
*Individual Defendants' Reply to Opposition*

cannot make a referral to the physician through the Health Plan and that they may be exposed to

additional expense if they go outside the Health Plan for services.  I instructed my staff to

provide the same information if they are asked about a referral to a non-network provider.  My

physician assistant communicated this information to Judy Gantt when she asked about seeing

Dr. Lurie.  I do not recall speaking to Geraldine Edwards about Dr. Lurie.

    I AFFIRM, under penalty of perjury that the forgoing is true and correct.


Dated: October  1 0 , 2006.

                                             Jacob Lustgarten, M.D.

396164.1
10/5/2006

STATE OF MARYLAND
STATE DEPARTMENT OF TAXATION
CUST ID:0001793825
WORK ORDER:0001236068
DATE:06-07-2006 10:34 AM
AMT. PAID:$170.00

ARTICLES OF INCORPORATION OF
LURIE SURGICAL SERVICES, P.C.

FIRST: The undersigned, Dean Kevin Lurie, M.D., whose address is 5125 Chevy Chase Parkway, Washington, DC 20015, being at least eighteen years of age, does hereby form a professional corporation under the general laws of the State of Maryland.

SECOND: The name of the corporation (hereinafter referred to as the "Corporation") is LURIE SURGICAL SERVICES, P.C.

THIRD: The purposes for which the Corporation is formed are as follows: To engage in the general practice of medicine, to engage in any lawful business or other activity, and, to do such acts and carry on such business as may be permitted now or hereafter by Title 5 Subtitle (1) of the Corporations and Associations Article of the Annotated Code of Maryland.

FOURTH: The street address of the initial principal office of the Corporation in Maryland is 300 East Lombard Street, Baltimore, Maryland 21202. The name of the initial resident agent of the Corporation in Maryland is The Corporation Trust Incorporated, at the same address.

FIFTH: The Corporation has authority to issue Five Thousand (5,000) shares, all of one class and designated as Common Stock, with the par value of One Cent ($.01) per share.

SIXTH: The initial number of directors of the Corporation shall be one, which number may be increased or decreased pursuant to the bylaws of the Corporation so long as the number of directors is not less than the number of stockholders if the stockholders are less than three, and the name of the initial director who will serve as director until his successor is elected and qualified is Dean Kevin Lurie, M.D., whose address is 5125 Chevy Chase Parkway, Washington, DC 20015.

SEVENTH: The duration of the Corporation shall be perpetual.

EIGHTH: The provisions for the regulation and management of the affairs of the Corporation are set forth in the bylaws of the Corporation.

In WITNESS WHEREOF, I have signed these Articles of Incorporation and acknowledge the same to be my act on this 1st day of June, 2006.

*Exhibit 3*

*Individual Defendants' Reply to Opposition*

STATE OF MARYLAND

I hereby certify that this is a true and complete copy of the ___3___ page document on file in this office. DATED: _10/3/06_

STATE DEPARTMENT OF ASSESSMENTS AND TAXATION

BY: _Sherry T Purland_ , Custodian

This stamp is... ...certification system. Effective: 6/95

B966-416

SIGNATURE OF INCORPORATOR:

Dear Kevin Lurie, MD, Incorporator

I hereby consent to my designation in this document as resident agent for this Corporation:

Resident Agent

Ena S. Murphy
Assistant Secretary

# CORPORATE CHARTER APPROVAL SHEET
## **EXPEDITED SERVICE**    ** KEEP WITH DOCUMENT **

DOCUMENT CODE _02_    BUSINESS CODE _06_

\# _____

Close _____    Stock _✓_    Nonstock _____

P.A. _____    Religious _____

Merging (Transferor) _____

_____

_____

_____

Surviving (Transferee) _____

_____

_____

New Name _____

```
1000361993090624

ID # D11322575 ACK # 1000361993090624
LIBER: B00966 FOLIO: 0416 PAGES: 0003
LURIE SURGICAL SERVICES, P.C.

06/01/2006  AT 03:37 P WO # 0001236863
```

### FEES REMITTED _____

| | |
|---|---|
| Base Fee: _100_ | _____ Change of Name |
| Org. & Cap. Fee: _20_ | _____ Change of Principal Office |
| Expedite Fee: _50_ | _____ Change of Resident Agent |
| Penalty: _____ | _____ Change of Resident Agent Address |
| State Recordation Tax: _____ | _____ Resignation of Resident Agent |
| State Transfer Tax: _____ | _____ Designation of Resident Agent |
| _____ Certified Copies | and Resident Agent's Address |
| Copy Fee: _____ | _____ Change of Business Code |
| _____ Certificates | |
| Certificate of Status Fee: _____ | |
| Personal Property Filings: _____ | _____ Adoption of Assumed Name |
| Mail Processing Fee: _____ | |
| Other: _____ | |
| TOTAL FEES: _170_ | _____ Other Change(s) |

Credit Card _____    Check _✓_    Cash _____    Code _007_

_____ Documents on _____ Checks    Attention: _____

Approved By: _10_

Keyed By: _____

COMMENT(S):

```
THE CORPORATION TRUST INCORPORATED
300 E LOMBARD ST
BALTIMORE           MD 21202-3219
```

**Stamp Work Order and Customer Number HERE**

```
STATE OF MARYLAND
DEPARTMENT OF ASSESSMENTS AND TAXATION
CUST ID:0001779485
WORK ORDER:0001236863
DATE:06-02-2006 10:34 AM
AMT. PAID:$170.00
```

| DC HOME | ABOUT DC | RESIDENTS | BUSINESS | VISITORS | DC GOVERNMENT |
|---|---|---|---|---|---|





## Health Professional Licensing Administration

DOH HOME

HPLA HOME

SERVICES
Professional Licensing
Boards/Regulations
Online Professional
License Search
Online License Application
Online License Renewal

INFORMATION

ONLINE SERVICE
REQUESTS

## Licensee Details
**Data current as of: October 3, 2006**

**Name\Phone**
DEAN KEVIN LURIE
3016185633

**Business Address**
2121 MEDICAL PARK DRIVE
#6
SILVER SPRING MD 20906

**Number:**
MD17226

**Profession:**
MEDICINE

**Type:**
MEDICINE AND SURGERY

Obtai
Natior

**From State/Prov:**
NA

**Issue Date:**
4/22/1988

**Expiration Date:**
12/31/2006

Status
Active

**Specialty Information (as reported by Licensee)**

Surgery - Board Certified

**Discipline Information from 1996 to Present - Please click item(s) below to view pub**

NONE

Government of the District of Columbia
Citywide Call Center : (202) 727-1000

Telephone Directory by Topic  |  Agencies  |  DC Council  |  Sea
Elected Officials

Feedback  |  Accessibility  |  Privacy & Security  |  Terms & Con

*Exhibit 4*
*Individual Defendants' Reply to Opposition*

**YAHOO!** LOCAL Maps   **Sign In**
New User? Sign Up                                                    Map

**Audible turn-by-turn directions**
with the new GPS-enabled VZ Navigator ℠
CHARGES APPLY. COVERAGE NOT AVAILABLE EVERYWHERE.
veri
FIND YOUR
TODA

# Yahoo! Driving Directions

**Starting from:** **A** 2121 Medical Park Dr, Silver Spring, MD 20902-4054

**Arriving at:** **B** 1400 Forest Glen Rd, Silver Spring, MD 20910-1459

**Distance:** 1.5 miles    **Approximate Travel Time:** 4 mins

## Your Directions

| | |
|---|---|
| 1. | Start at **2121 MEDICAL PARK DR, SILVER SPRING** - go **0.1 mi** |
| 2. | Turn **R** on **GEORGIA AVE[MD-97]** - go **0.1 mi** |
| 3. | Turn **L** on **DENNIS AVE** - go **0.1 mi** |
| 4. | Turn **L** on **DOUGLAS AVE** - go **0.2 mi** |
| 5. | Turn **L** on **DEXTER AVE** - go **0.1 mi** |
| 6. | Turn **R** on **GEORGIA AVE[MD-97]** - go **0.3 mi** |
| 7. | Turn **L** on **TILTON DR** - go **0.1 mi** |
| 8. | Turn **R** on **WOODLAND DR** - go **0.2 mi** |
| 9. | Turn **L** on **FOREST GLEN RD** - go **0.4 mi** |
| 10. | Turn **R** on a local road - go **< 0.1 mi** |
| 11. | Arrive at **1400 FOREST GLEN RD, SILVER SPRING** |

When using any driving directions or map, it's a good idea to do a reality check and make sure the road still exists, watch out for construction, and follow all traffic safety precautions. This is only to be used as an aid in planning.

**Your Full Route**                                                **Your Destination**

*Exhibit 5*
*Individual Defendants' Reply to Opposition*

Case 1:06-cv-01386-RCL   Document 10   Filed 10/10/2006   Page 28 of 28





**Address:**
1400 Forest Glen Rd
Silver Spring, MD 20910-1459

# 92466 it!

**Need Local information on the go?**
Simply text a business name and location to 92466 (Yahoo)

Try "coffee 20910" or "Starbucks Silver Spring, MD"

Copyright © 2006 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy - Yahoo! Maps Terms of Use - Help - Ad Feedback